LEVY, PHILLIPS & KONIGSBERG, LLP
800 Third Avenue - 13th Floor
New York, New York 10022
(212) 605-6200

**FILED UNDER SEAL PURSUANT TO
31 U.S.C. § 3730(b)(2) AND COURT
ORDER**

KREINDLER & ASSOCIATES, P.C.
9219 Katy Freeway - Suite 237
Houston, Texas 77024-1527
(713) 647-8889

CV 03   5143

ESON, J.

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

GOLD, M.J

| | | |
|---|---|---|
| UNITED STATES OF AMERICA EX REL. JOSEPH PIACENTILE, | ) | CIVIL ACTION NO. |
| PLAINTIFF, | ) | |
| - against - | ) | **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** |
| NEW YORK HYPERBARIC & WOUND CARE CENTERS, LLC, | ) | |
| KEITH G. GREENBERG, | ) | **JURY TRIAL DEMANDED** |
| MONTEFIORE MEDICAL CENTER, | ) | |
| FRANK J. VEITH, M.D., | ) | |
| LONG BEACH MEDICAL CENTER, | ) | |
| PASSAIC BETH ISRAEL HOSPITAL, | ) | |
| BETH ISRAEL MEDICAL CENTER, | ) | |
| and | ) | |
| NEW YORK WESTCHESTER SQUARE MEDICAL CENTER, | ) | |
| DEFENDANTS. | ) | |

00006842.WPD

## COMPLAINT

On behalf of the United States of America, plaintiff and relator Joseph Piacentile file this *qui tam* complaint against defendants **NEW YORK HYPERBARIC & WOUND CARE CENTERS, LLC, KEITH G. GREENBERG, MONTEFIORE MEDICAL CENTER, FRANK J. VEITH, M.D., LONG BEACH MEDICAL CENTER, PASSAIC BETH ISRAEL HOSPITAL, BETH ISRAEL MEDICAL CENTER, and NEW YORK WESTCHESTER SQUARE MEDICAL CENTER,** and in support thereof allege as follows:

### INTRODUCTION

1.      This is an action to recover damages and civil penalties on behalf of the United States of America arising from false statements and claims made or caused to be made by the defendants to the United States in violation of the False Claims Act 31 U.S.C. §§ 3729, *et seq.* (The "FCA").

2.      Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act. The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud against the United States.

3.      The FCA provides that any person who knowingly submits or causes to submit to the Government a false or fraudulent claim for payment or approval is liable for a civil penalty of from $5500, up to $11,000 for each such claim, plus three times the amount of the damages sustained by the Government. The Act empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery. The complaint must be filed under seal without service on the defendant(s). The

00006842.WPD

2

complaint remains under seal in order to give the Government an opportunity to conduct an investigation of the allegations in the complaint and determine whether to join the action.

4.     Pursuant to the FCA, relator herein seeks to recover on behalf of the United States damages and civil penalties arising from the submission of false or fraudulent claims supported by false statements that defendants submitted, conspired to submit or caused to be submitted to Medicare as well as illegal fee-splitting arrangements between defendants.

5.     Defendants have systematically defrauded Medicare by filing false claims which certified that a particular physician was present during Hyperbaric Oxygen Therapy sessions when, in fact, said physician was not present.  Defendants also falsified documents submitted to Medicare and committed numerous other regulatory violations. Defendants' wrongful conduct began in the year 2000 and has continued through the present in most if not all the ways described herein.

6.     Defendants have systematically violated 42 U.S.C. § 1320a-7a and 42 U.S.C. § 1320a-7b (also known as the Medicare Fraud & Abuse/Anti-Kickback Statute) resulting in significant revenues for defendants and resulting in overutilization of medical services as well as medically unnecessary and excessive reimbursements.

7.     Defendants also established illegal fee-splitting arrangements to generate a steady stream of new patient referrals. Through this illegal system, defendants submitted and caused to be submitted false and improper billings seeking Medicare reimbursement from the United States for medically unnecessary and excessive services.

8.     Defendants also knowingly failed to comply with numerous regulatory requirements governing Hyperbaric Oxygen Therapy ("HBO") including but not limited to the New York and New Jersey Medicare Local Medical Review Policies. Although not providing proper services as required

LEVY PHILLIPS &
KONIGSBERG, L.L.P.
800 THIRD AVENUE
NEW YORK, N.Y. 10022

by regulation, defendants billed the Medicare program as if they had complied in full with such requirements. As a result, defendants were paid by the United States of America for services that were inconsistent with both national and local regulatory requirements.

## PARTIES

9.     Relator Joseph Piacentile, M.D., is a New Jersey physician and businessman, who conducted an investigation of the wrongdoing conducted by New York Hyperbaric, Keith G. Greenberg, the defendant hospitals and Dr. Veith. Dr. Piacentile recorded interviews with defendant Keith G. Greenberg as well as Doug McKay, DPM, during which they admitted the wrongdoing. Relator brings this action for violations of the FCA on behalf of himself and the United States, pursuant to 31 U.S.C. § 3730(b)(1).

10.     Defendant New York Hyperbaric & Wound Care Centers, LLC ("Hyperbaric") is a limited liability company organized and existing under the laws of New York. Its corporate offices and principal place of business is located at 2700 Westchester Avenue, Purchase, New York 10577. Hyperbaric develops and manages comprehensive wound care centers including the specialized services of hyperbaric medicine in conjunction with acute care hospitals.

11.     Defendant Keith G. Greenberg ("Greenberg"), is a New York businessman and has been the president of Hyperbaric since February, 1997.. Defendant Greenberg has knowledge of the false claims alleged herein.

12.     Defendant Montefiore Medical Center ("Montefiore") is a hospital established in 1884 and located at 111 East 210th Street, Bronx, New York 10467. Montefiore is composed of The Children's Hospital at Montefiore, Moses Division Hospital, Weiler-Einstein Hospital, Greene Medical Arts Pavilion, Montefiore Medical Park and Primary Care.

00006842.WPD

4

13.     Defendant Frank J. Veith, M.D. ("Dr. Veith") is a duly licensed physician specializing in general and thoracic surgery and sub-specializing in vascular surgery.  He is affiliated with Montefiore and maintains an office at Medical Arts Pavilion, 3400 Bainbridge Avenue, 4th Floor, Bronx, New York 10467.

14.     Defendant Long Beach Medical Center ("Long Beach") is a hospital located at 455 East Bay Drive, Long Beach, New York 11561 and has been serving the local community since 1922.  Long Beach is a community teaching hospital with teaching affiliations with the New York College of Osteopathic Medicine and the New York College of Podiatric Medicine.

15.     Defendant Passaic Beth Israel Hospital ("Passaic") is a hospital located at 70 Parker Avenue, Passaic, New Jersey 07055 and has been providing care since its inception in 1926.  Passaic is a full-service, 223-bed, acute care facility.

16.     Defendant Beth Israel Medical Center ("Beth Israel") is a 1,368-bed, full service tertiary teaching hospital with its Petrie Division located at 16th Street and 1st Avenue, New York, New York 10003.  Beth Israel has 7,859 full-time employees and averages more than 373,000 days of patient care per year.

17.     Defendant New York Westchester Square Medical Center ("Westchester Square") is a hospital located at 2475 St. Raymond Avenue, Bronx, New York 10461 and has been serving the Bronx community since 1929.  The staff of over 1000 healthcare professionals provide service to more than 50,000 patients annually.  Westchester Square is affiliated with the New York-Presbyterian Healthcare Network as well as Weill Medical College - Cornell University.

LEVY PHILLIPS &
KONIGSBERG, L.L.P.
800 THIRD AVENUE
NEW YORK, N.Y. 10022

## JURISDICTION AND VENUE

18.     The Court has jurisdiction over the subject matter of this action pursuant to both 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. § 3730.

19.     The Court has personal jurisdiction over the defendants pursuant to 31 U.S.C. § 3732(a) which authorizes nationwide service of process and because the defendants have minimum contacts with the United States. At least one defendant can be found, resides or transacts, or has transacted, business in the Eastern District of New York and/or at least one act proscribed by 31 U.S.C. § 3729 occurred in the Eastern District of New York.

20.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because at least one of the defendants can be found, resides or transacts, or has transacted, business in the Eastern District of New York and/or at least one act proscribed by 31 U.S.C. § 3729 occurred in the Eastern District of New York.

## BACKGROUND ALLEGATIONS

21.     The Medicare Program is the federal health insurance program for the aged and disabled established by Congress in 1965, as Title XVIII of the Social Security Act and codified at 42 U.S.C. § 1395, et seq. The Medicare Program is administered through the Centers for Medicare and Medicaid Services (CMS), formerly the Health Care Financing Administration (HCFA). The CMS is a division of the Department of Health and Human Service (HHS) of the United States Federal Government. Defendant hospitals and defendant Dr. Veith are certified and/or approved as providers or suppliers under the Medicare Program.

00006842.WPD

6

LEVY PHILLIPS &
KONIGSBERG, L.L.P.
800 THIRD AVENUE
NEW YORK, N.Y. 10022

22.     The Medicare Program is divided into three parts: 1) hospital insurance, also known as Part A, 2) supplementary medical insurance, also known as Part B, and 3) "Medicare + Choice," also known as Part C , which provides new health care options in addition to basic Medicare benefits.  *See* 42 U.S.C. §§ 1395 through 1395i-5 (Part A – Hospital Insurance Benefits For The Aged and Disabled); *see also* 42 U.S.C. §§ 1395j through 1395w-4 (Part B – Supplemental Medical Insurance Benefits For The Aged and Disabled); 42 U.S.C. § 1395w-21 (Medicare + Choice Plan).

23.     Part B of the Medicare Program provides supplemental medical insurance.  Part B deals primarily with coverage for physician services (in both hospital and non-hospital settings).  Medicare will only pay for health services provided by a physician that are medically necessary. *See* 42 C.F.R. § 410.3 (Scope of Benefits); see also Overview of Medicare, Medicare (HI and SMI) Coverage, provided by HCFA .

24.     For Medicare Part B purposes, a physician is described as a doctor of medicine, doctor of osteopathy, doctor of dental surgery or dental medicine, a chiropractor, doctor of podiatry or surgical chiropody, or a doctor of optometry legally authorized to practice by state in which he or she performs this function.  *See* CMS Hospital Manual, Chapter II – Coverage of Hospital Services, Section 208.

25.     Part B of the Medicare Program is a voluntary program financed in part through premiums paid by the participants.  Each Medicare Part B participant must pay a basic monthly premium, as well as any deductible or co-insurance amount.  *See* CMS Carrier Manual, Part 3, Chapter I – Entitlement and Enrollment, § 1050.

26.     Medicare Part B is funded by the Federal Government.  There are two ways that the government makes payments under Part B of the Medicare Program: 1) Payments can be made

directly to the physician – the assignment method; or 2) Payment can be made to the patient who is obligated to reimburse the physician. *See* CMS Carrier Manual, Part 3, Chapter III – Claims Filing Jurisdiction and Development Procedures, § 3001.   Any physician who does not accept the assignment method must refund all amounts collected on claims for services that are not medically necessary.

27.     Local carriers are contracted by CMS to, among other reasons, implement Local Medical Review Policy (LMRP) which is an administrative and educational tool to assist providers, physicians and suppliers in submitting correct claims for payment.   LMRPs outline how doctors, hospitals and other medical contractors will review claims to ensure that they meet Medicare coverage requirements.   The CMS requires that LMRPs be consistent with national guidance, developed with scientific evidence and clinical practice, and be developed in accordance with certain specified federal guidelines.   Medical Directors of contractors develop these policies.

28.     In New York City and surrounding areas as well as in New Jersey, Empire Medical Services is the local contractor who formulates the LMRPs.   Both the New York State Medicare Local Medical Review Policy ("NY-LMRP") and the New Jersey Medicare Local Medical Review Policy ("NJ-LMRP") are identical and are in compliance with the Federal Medicare Coverage Issues Manual, section 35-10, which defines coverage conditions for Hyperbaric Oxygen Therapy (HBO) and is part of the Health Care Financing Administration (HFCA) National Coverage Policy.

29.     HBO is a medical treatment that uses the administration of 100 percent oxygen at controlled pressure (greater than sea level) for a prescribed amount of time - usually 60 to 90 minutes.   HBO therapy is commonly used to treat conditions such as burns and difficult healing wounds, including potential loss of function or a limb is threatened.   It is also being used to treat

such diverse conditions as cerebral palsy and Lyme disease.  HBO therapy facilitates healing in these conditions by increasing the amount of oxygen in the blood up to 2000 percent, depending on the treatment depth.  This is turn dramatically increases the amount of oxygen at the cellular level.

30.     Even though HBO therapy may be used to treat different conditions, the Medicare program strictly limits the conditions for which it is willing to provide coverage.

31.     Reimbursement for HBO therapy is based upon the HFCA's Common Procedure Coding System ("HCPCS") which is the system used by Medicare.  This system is intended to simplify reporting of services rendered and to identify accurately the services or supplies provided.

32.     The HCPCS Coding system consists of three coding levels.  Level I codes are found in Current Procedural Terminology ("CPT"), published by the American Medical Association.  The CPT uses five-digit codes with descriptive terms to identify services performed by health care providers and is the country's most widely-accepted coding reference.  Level II national codes (also referred to as "HCPCS") have been developed by HFCA to report medical services and supplies not found in the CPT.  Level III local codes are assigned and maintained by individual Medicare carriers to describe new procedures that are not yet included in Level I or Level II codes.

33.     As of April 1, 2000, under the relevant LMRP guidelines, provision for payment for HBO therapy involved both a technical component (treatment session) and a professional component (physician supervision of treatment session).  In order to submit a proper claim for the technical component of HBO therapy, the treatment must be administered in a chamber (including the one man unit) and the patient must have been diagnosed with one of the allowable specified conditions.

LEVY PHILLIPS &
KONIGSBERG, L.L.P.
800 THIRD AVENUE
NEW YORK, N.Y. 10022

34.     In order to submit a proper claim for the professional component of HBO therapy, the supervising physician must be in constant attendance during the entire HBO treatment session. In addition, a physician qualified in HBO therapy must be credentialed by the hospital in which HBO therapy is performed.   Credentialing includes, at a minimum, all of the following: 1) training, experience and privileges within the institution to manage acute cardiopulmonary emergencies; 2) completion of a recognized hyperbaric medicine training program as established by either the American College of Hyperbaric Medicine or the Undersea and Hyperbaric Medical Society (UHMS), with a minimum of sixty (60) hours of training and documented by a certificate of completion of an equivalent program; and 3) continuing medical education in hyperbaric medicine of a minimum of 16 hours every 2 years after initial credentialing.

35.     Payment for the professional component of HBO therapy is submitted under Level I Code 99183 (Physician attendance and supervision of hyperbaric oxygen therapy, per session). Documentation supporting the medical necessity for the HBO treatment, such as ICD-9-CM diagnosis codes, must be submitted with each claim for payment.

36.     Medicare prohibits providers from paying or receiving remuneration with the intent to induce referrals. Under the Social Security Act, a person may not offer or transfer remuneration to a beneficiary that such person knows or should know is likely to influence the beneficiary to order items or services from a particular provider, practitioner or supplier. 42 U.S.C. § 1320a-7a(a)(5) (The Medicare Anti-Kickback Statute).

37.     The Medicare and Medicaid Patient and Program Protection Act of 1987 authorizes the exclusion of an individual or entity from participation in the Medicare and Medicaid programs if it is determined that the party has violated the Anti-kickback Statute. In addition, the Balanced

Budget Act of 1997 amended section 1128A(a) of the Social Security Act to include an administrative civil money penalty provision for violating the anti-kickback statute. The administrative sanction is $50,000 for each violation and an assessment of not more than 3 times the amount of remuneration offered, paid, solicited or received, without regard to whether a portion of such remuneration was offered, paid, solicited or received for a lawful purpose. See 42 U.S.C. § 1320a-7a(a)(7).

38.     Paying such remuneration amounts to a kickback and can increase the expenditures paid by Government-funded health benefit programs by leading to overutilization of medical services, inducing medically unnecessary and excessive reimbursements, and overstating a supplier's actual charge by the amount of the referral fee. Kickbacks also have the effect of reducing a patient's healthcare choices as unscrupulous suppliers or physicians steer the patient to various services based on the physician's or supplier's own financial interests rather than the patient's medical needs

39.     The Medicare Anti-kickback Statute, 42 U.S.C. § 1320a-7b(b), also provides criminal penalties for individuals or entities that knowingly and willfully solicits or receives remuneration to induce the referral of business for which payment may be made in whole or in part under a Federal health care program. The offense is a felony punishable by fines of up to $25,000 or imprisonment for up to 5 years, or both.

40.     The Medicare Anti-kickback Statute contains five statutory exceptions from the statutory prohibitions and other regulatory "safe harbors" have been enacted to exclude certain types of conduct from the reach of the anti-kickback statute. None of the statutory exceptions or regulatory safe harbors protects defendants' conduct.

41.     The Medicare Self-referral Statute, commonly known as the "Stark" law, also prohibits defendants' conduct.  The current Stark law, commonly known as "Stark II", became effective January 1, 1995, and prohibits physicians from referring Medicare patients to an entity for certain "designated health services," including diagnostic laboratory testing services, if the referring physician has a nonexempt "financial relationship" with such entity. 42 U.S.C. § 1395nn(a)(1), (h)(6).  Stark II provides that the entity may not present or cause to be presented a Medicare claim for services furnished pursuant to a prohibited referral, and expressly prohibits payment of Medicare claims for services rendered in violation of its provisions.  42 U.S.C. § 1395nn(a)(1), (g)(1).

## SPECIFIC ALLEGATIONS

42.     Defendants established illegal fee-splitting arrangements which resulted in false and improper billings seeking Medicare reimbursement from the United States for medically unnecessary and excessive services.

43.     In October, 2000, defendant Hyperbaric, in violation of the Anti-kickback Statute and the Medicare Self-referral Statute, entered into an illegal fee-splitting agreement with Montefiore Medical Center through defendant Dr. Veith whereby Hyperbaric undertook to and did install a hyperbaric chamber at Montefiore Medical Center at no cost and no risk of financial loss to Montefiore.  Under the scheme, Dr. Veith agreed to and did refer patients to the Hyperbaric operated hyperbaric oxygen chamber at Montefiore for HBO therapy.  Montefiore agreed to and then submitted claims for payment and Montefiore kept 25% of the expected Medicare payment from billing of the technical service component for HBO treatments while Hyperbaric received 75% of said payment.

00006842.WPD

12

LEVY PHILLIPS &
KONIGSBERG, L.L.P.
800 THIRD AVENUE
NEW YORK, N.Y. 10022

44.     In October, 2000, defendant Hyperbaric entered into a similar 75/25 illegal fee-splitting agreement with Long Beach Medical Center whereby Hyperbaric undertook to and did install a hyperbaric chamber at Long Beach Medical Center at no cost and no risk of financial loss to the hospital.  Long Beach Medical Center agreed to and then submitted claims for payment and Long Beach kept 25% of the expected Medicare payment from billing of the technical component for HBO treatments while Hyperbaric received 75% of said payment.

45.     In January, 2002, defendant Hyperbaric entered into a similar 75/25 illegal fee-splitting agreement with defendant Passaic Beth Israel Hospital whereby Hyperbaric undertook to and did install a hyperbaric chamber at Passaic Beth Israel Hospital at no cost and no risk of financial loss to the hospital.  The hospital agreed to and then submitted claims for payment and Passaic Beth Israel Hospital keeps 25% of the expected Medicare rate from billing of the technical component for HBO treatments while Hyperbaric receives 75% of said rate

46.     In January, 2002, defendant Hyperbaric entered into a similar 75/25 illegal fee-splitting agreement with defendant Beth Israel Medical Center whereby Hyperbaric agreed to and did install a hyperbaric chamber at Beth Israel Medical Center at no cost and no risk of financial loss to the hospital.  The hospital agreed to and then submitted claims for payment and Beth Israel Medical Center keeps 25% of the expected Medicare rate from billing of the technical component for HBO treatments while Hyperbaric receives 75% of said rate.

47.     In October, 2001, defendant Hyperbaric entered into a similar 75/25 illegal fee-splitting agreement with defendant New York Westchester Square Medical Center through Dr. Petracca who refers patients for HBO therapy whereby Hyperbaric would install a hyperbaric chamber at New York Westchester Square Medical Center at no cost and no risk of financial loss to the hospital.  The hospital agreed to and then submitted claims for payment and Westchester

Square kept 25% of the expected Medicare rate from billing of the technical component for HBO treatments while Hyperbaric receives 75% of said rate.

48.     Defendants have also systematically defrauded Medicare by filing false claims which certified that a particular physician was present during Hyperbaric Oxygen Therapy sessions when, in fact, said physician was not present.

49.     Defendant Dr. Veith agreed to and did bill Medicare for services as the physician allegedly present for the HBO treatments at Montefiore.  In fact, Dr. Veith was not present during the HBO treatment sessions and the only physician present was Lorraine Dylan, DPM, a podiatrist who was actually employed by Hyperbaric.  Dr. Dylan supervised the HBO therapy at Montefiore while her services (the "professional" component) were represented as being performed by Dr. Veith and were, in fact, billed and collected by Dr. Veith.

50.     At defendant Passaic Beth Israel Hospital, Doug McKay, DPM, a podiatrist who supervised the HBO therapy at Passaic, was advanced a "salary" of $6000.00 per month by Hyperbaric.  Dr. McKay then remitted to Hyperbaric $65 from the amount received from Medicare for supervising each HBO treatment which Hyperbaric characterized as a fee for advancing him monies, billing/collecting Medicare monies and "management" services under a management contract between Hyperbaric and Dr. McKay.

51.     Dan Matthews, DPM, a podiatrist who supervised the HBO therapy at Westchester Square, was advanced a "salary" of $6000.00 per month by Hyperbaric (which was eventually returned) and ultimately shared with Dr. Petracca in the professional fees generated by billing Medicare.  This arrangement is pursuant to a management contract between Hyperbaric and Dr. Petracca.

52.     Defendants also knowingly failed to comply with numerous regulatory requirements governing HBO Therapy including but not limited to the New York and New Jersey Medicare Local Medical Review Policies. Although not providing proper services as required by regulation, defendants billed the Medicare program as if they had complied in full with such requirements. As a result, defendants were paid by the United States of America for services that were inconsistent with both national and local regulatory requirements.

53.     A podiatrist has never been qualified to supervise HBO therapy.  In a clarification in the August/September 2002 Medicare News Brief of Empire Medical Services (the local Medicare provider for New Jersey and the downstate New York area), podiatrists were excluded from supervising HBO therapy, making it a clear violation of Medicare guidelines to submit claims for supervision of HBO therapy when a podiatrist is the "supervising" physician. As such, each hospital defendant has systematically violated Medicare regulations by having a podiatrist supervise HBO therapy and billing Medicare for said services.

54.     At all times relevant to this complaint, it was a violation of federal law to submit, conspire to submit, or cause to be submitted, a false or fraudulent claim for payment or approval by Medicare.

55.     At all times relevant to this complaint, it was a violation of federal law to make,  use, conspire to make or use, or cause to be made or used, a false record or statement as a device to cause a false or fraudulent Medicare claim to be paid or approved by Medicare.

56.     At all times relevant to this complaint, it was a violation of federal law to conspire to defraud the United States by causing a false or fraudulent claim to be submitted, allowed or paid.

57.     At all times relevant to this complaint, no claim for payment may be presented to Medicare for a service furnished pursuant to a referral made under a prohibited kickback arrangement.

## COUNT ONE
## False Claims Act 31 U.S.C. § 3729(a)(1) and (a)(2)

58.     Relator realleges and incorporates by reference the allegations contained in Paragraphs 1 through 57 of this complaint.

59.     This is a claim for treble damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729, *et seq.*, as amended.

60.     By virtue of the acts described above, defendants knowingly presented or caused to be presented to the United States Government false or fraudulent claims for the payment or approval of medical services.

61.     By virtue of the acts described above, defendants knowingly made, used or caused to be made or used false records or statements to cause a false or fraudulent claim to be paid or approved by the United States Government.

62.     By virtue of the acts described above, defendants knowingly engaged in kickback schemes for the purpose of inducing, and did induce, the presentation of false or fraudulent claims to the United States Government for the payment of medical services as described above.

63.     The United States, unaware of the falsity of the records, statements or claims made by the defendants or the kickbacks involved, paid the defendants for claims that would otherwise not have been allowed.

64.     By reason of these payments, the United States has been damaged, and continues to be damaged, in a substantial amount.

## COUNT TWO
### False Claims Act 31 U.S.C. § 3729(a)(3)

65.     Relator realleges and incorporates by reference the allegations made in paragraphs 1 through 57 of this complaint.

66.     This is a claim for treble damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729, *et seq*. By virtue of the acts described above, defendants conspired to defraud the United States Government by getting a false or fraudulent claim to be allowed or paid for medical services.

67.     By virtue of the acts described above, defendants conspired to make, use or cause to be made or used, false records or statements to get a false or fraudulent claim to be paid or approved by the United States Government.

68.     As described above, defendants knowingly conspired to engage in kickback schemes for the purpose of inducing, and did induce, the presentation of false or fraudulent claims to the United States Government for the payment of medical services as described above

69.     The United States, unaware of the defendants' conspiracy, paid the defendants for claims that would otherwise not have been allowed.

70.     By reason of these payments, the United States has been damaged, and possibly continues to be damaged, in a substantial amount.

**WHEREFORE,** relator Joseph Piacentile requests that judgment be entered against defendants, ordering that:

a.     Defendants cease and desist from violating the False Claims Act, 31 U.S.C. § 3729, et seq.;

LEVY PHILLIPS &
KONIGSBERG, L.L.P.
800 THIRD AVENUE  00006842.WPD
NEW YORK, N.Y. 10022

17

b.     Defendants pay not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729 plus three times the amount of damages the United States has sustained because of defendant's actions;

c.     Relators be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

d.     Relators be awarded all costs of this action, including attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d);

e.     Defendants be enjoined from concealing, removing, encumbering or disposing of assets which may be required to pay the civil monetary penalties imposed by the Court;

f.     Defendants disgorge all sums by which they have been enriched unjustly by their wrongful conduct; and

g.     The United States and Joseph Piacentile recover such other relief as the Court deems just and proper.

## REQUEST FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Joseph Piacentile hereby demands a trial by jury.

LEVY PHILLIPS &
KONIGSBERG, L.L.P.
800 THIRD AVENUE
NEW YORK, N.Y. 10022

00006842.WPD

Dated: New York, New York
       October 9, 2003

Respectfully submitted,

LEVY PHILLIPS & KONIGSBERG, LLP

By: _____
      Alan J. Konigsberg (6373)
800 Third Avenue - 13th Floor
New York, New York 10022
(212) 605-6200

KREINDLER & ASSOCIATES, P.C.
9219 Katy Freeway - Suite 237
Houston, Texas 77024-1527
(713) 647-8889

COUNSEL FOR REALTOR JOE PIACENTILE